IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ERIC D. BLACKMON                                                                                PLAINTIFF

VS.                                                        CIVIL ACTION NO. 1:15-cv-00313-HSO-JCG

HUNTINGTON INGALLS                                                                      DEFENDANT

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Eric Blackmon sued his current employer for disability discrimination because he was placed on leave in October 2014 after he refused to take an OSHA-required respirator fit test. Blackmon claims that an alleged neck-related disability prevented him from taking the test, but he admits he had no work restriction that limited his ability to take it. In fact, when Blackmon decided to return to work more than three months later, though he had more significant work restrictions than when he had declined to take the test, he took and passed it with no difficulty. The three-and-a-half-month leave for which Blackmon seeks damages was self-imposed; it was not the result of disability discrimination. In addition, Blackmon has already been compensated for the time he was off work through a worker's compensation case in which he represented to the court that he was totally disabled and could not work for the entire duration of his leave.

Based on this representation, Blackmon's claim is barred by the doctrine of judicial estoppel. Moreover, Blackmon has not offered any proof that he was a qualified individual capable of fulfilling his job duties during his leave, or that HII failed to engage in the interactive process with him. To the contrary, when asked to present medical documentation to support his alleged inability to take the respirator fit test, Blackmon left and did not return for more than

three months. These facts, combined with Blackmon's admission that he could not work at all during his leave, demonstrate that he cannot state a claim under the Americans with Disabilities Act (ADA).  Summary judgment is appropriate.

## FACTS

Eric Blackmon was hired as an electrical technician in 2004 at the Pascagoula shipyard owned by Defendant Huntington Ingalls Incorporated ("HII"), and he remains employed as one today. (Plaintiff's Dep., Ex. 1, at 8) In October 2012, Blackmon was walking through a ship passageway and—while wearing his hardhat—bumped his head on a suspended speaker. (Progress Note & Status Reports, Ex. 2) As a result of his alleged injuries, he took a medical leave of absence from October 31, 2012 through January 7, 2013. (*Id.*) He returned to work the second week of January 2013 with the following work restrictions: He could not lift over 20 pounds, could only occasionally do overhead work, and was allowed to engage in work requiring extreme neck positions only occasionally. (Work Release, Ex. 3)  A week later, on January 14, Blackmon took another medical leave. (Work Excuse & Status Report, Ex. 4)

On May 13, 2013, Blackmon notified HII that some of his restrictions had been increased so that he could no longer bend, kneel, climb stairs, stoop, perform overhead work, or climb ladders.  Notably, however, Blackmon's doctor had removed the restriction relating to extreme neck positions. In fact, he had no work restrictions at all limiting his neck movement. (Work Release, Ex. 5)  In an attempt to accommodate his restrictions, HII's Return-to-Work Committee compared Blackmon's restrictions with all available work in his job classification, but the shipyard did not have any position in which he could work with the increased restrictions.

On August 12, 2013, Blackmon's doctor reduced his restrictions and he was reinstated. (Work Restrictions & Status Report, Ex. 6)  He still was not restricted in any way from moving

his neck. Blackmon worked until early 2014 before again taking a medical leave in March when his restrictions were again increased. (Work Release, Ex. 7) HII was able to accommodate these increased restrictions in May, and Blackmon returned to work. (Status Report, Ex. 8)

On August 7, Blackmon visited his physician, Dr. Kesterson, complaining of neck pain. Dr. Kesterson, a neurosurgeon, examined Blackmon and noted the following: "Self-limiting behavior probably still present. I believe his subjective complaints far outweigh objective findings. . . . Patient was not forthcoming with his current restriction status." (Kesterson Note, Ex. 9; *See* Pltf. Dep. 50) Blackmon's restrictions were nevertheless increased, though there was still no limitation on his neck movement, and Blackmon again took medical leave on August 8. (Work Release & Status Report, Ex. 10) Three days later, HII received correspondence from Dr. Kesterson's office stating that the restrictions given to Blackmon on August 7 were not correct; the office had made a clerical error. (Aug. 11 Work Release, Restrictions, Status Report, Ex. 11) As of August 11, 2014, Blackmon's work restrictions consisted of the following: No lifting over 45 pounds, and occasional bending, kneeling, stair climbing, stooping, overhead reaching, ladder climbing were permitted. (*Id.*) There again were no restrictions on Blackmon's neck movements. That restriction had been lifted fifteen months earlier. Blackmon was reinstated on August 12, 2014.

During late summer and early fall of 2014, HII was transitioning from US Safety respirators to 3M respirators. (Orozco Declaration, Ex. 12, at ¶5) Therefore, all employees in the shipyard who worked in positions in which they might breathe unhealthy fumes were required to be fitted for a new respirator. (*Id*. at ¶¶3-6) Blackmon and approximately 3,000 of his co-workers were required to complete the test. (*Id*. at ¶¶5-6)

3

The test was simple. Each employee was asked to complete a questionnaire and watch an OSHA-required video that lasted 18 minutes. The personnel administering the test entered the employee's name and badge number into a computer and helped the employee put on the respirator. The employee was then prompted by the computer to speak, nod up and down, and turn his head side to side about 45 degrees each way. (Hesselrode Declaration, Ex. 13, ¶4) As the employee did so, the computer sensed whether the respirator remained sealed against the employee's face. This portion of the test lasted less than ten minutes and, once completed, the computer reported whether the respirator fit. If so, the employee returned to work. If the computer reported that the respirator did not fit properly, it was adjusted until it did. (*Id*.)

Blackmon reported for his respirator fit test on the morning of October 16, 2014. (*Id*. at ¶5; McRaney Declaration, Ex. 14, at ¶4) By this time, he had filed a worker's compensation claim related to his alleged injuries from bumping his head on the speaker. (Pltf. Dep. 33) When he arrived at HII's on-site medical facility, Blackmon completed his questionnaire, watched the video, and put on the respirator. (Hesselrode Dec. ¶5; Questionnaire, Ex. 15) Shortly into this portion of the test, Blackmon stopped and stated that he was in pain and could not turn his head either way. (*Id*.)  The employee administering the test checked Blackmon's work restrictions, confirmed that he had no restriction on neck movements that would prevent him from completing the test, and then notified Lance Hesselrode, HII's on-site nurse practitioner. (Hesselrode Dec. ¶5; McRaney Dec. ¶4; Aug. 11 Restrictions at Ex. 11) Hesselrode also reviewed Blackmon's restrictions and confirmed that he had no restrictions on neck movement. Hesselrode attempted to explain to Blackmon that he should be able to take the test, but Blackmon refused even to try.  (Hesselrode Dec. ¶6, Encounter Notes, Ex. 16.)

Hesselrode then asked HII's company physician, Dr. Charles McRaney, to speak with Blackmon. (McRaney Dec. ¶4; Notes at Ex. 16) Dr. McRaney told Blackmon that he had no restriction prohibiting extreme neck positions and, even if had such a restriction, the test did not require any extreme neck positions. (McRaney Dec. at ¶5) Blackmon still refused. Dr. McRaney asked Blackmon if he had driven to work. Blackmon said he had, and Dr. McRaney explained that the test would not require him to turn his head any more than he did when he drove to work. (*Id*. at ¶6, Pltf. Dep. 31) Blackmon still would not take the test. Dr. McRaney then notified Blackmon that, because his work restrictions did not limit his ability to take the test, he could either complete the test and return to work or take another leave of absence to obtain medical evidence that he was unable to take the test. Blackmon chose the latter. (McRaney Dec. at ¶¶7-8) Blackmon was then sent to Michelle Edwards, who processed his medical leave. She made it clear that he would have to provide additional documentation from his doctor to justify his inability to take the respirator test. (Edwards Declaration, Ex. 17, ¶5)

Blackmon did not return to the shipyard with the requested documentation during the last two weeks of October. Nor did he do so in November or December. In fact, he did not return until January 2015. To this day, he has not provided any medical justification for refusing to take the respirator fit test.

On January 6, 2015, Blackmon turned in a new set of work restrictions he had obtained from Dr. Kesterson the day before. For the first time since May 9, 2013, they included a restriction that Blackmon could perform work requiring extreme neck positions only occasionally. (Work Release & Restrictions, Ex. 18; Edwards Dec. ¶8) On January 22, however, Dr. Kesterson confirmed that this restriction did not prevent Blackmon from completing the respirator fit test. Specifically, Dr. Kesterson stated that there "[s]hould be no problems with Mr.

5

Blackmon using respirator or performing test." (*Id*. at ¶7; McRaney Dec. ¶8, 1/22/15 Comments, Ex. 19) And he was right. On January 27, 2016, Blackmon reported to HII and completed the same test he had claimed he could not complete only three months earlier. (Pltf. Dep. 24; McRaney Dec. ¶8; Records of Visit, Ex. 20)

Blackmon's explanation for being unable to complete the test in October but able to complete it in January is unpersuasive: He asserted that cold weather bothers his neck and claimed that the day he did not complete the test—October 16, 2014—was colder than the day he completed and passed it—January 27, 2015. (Pltf. Dep. 24) But the weather data show just the opposite. The high temperature recorded on October 16, 2014 was 81 degrees. On January 27, 2015, it was ten degrees colder. (Weather Data[1], Ex. 21) Blackmon was reinstated after passing the test and has worked continuously since then.

Blackmon and HII settled his pending worker's compensation case in March of 2015. Blackmon signed a stipulation in which he represented to the administrative law judge that he was temporarily and totally disabled for a number of time periods, including the entire period of his leave from October 16, 2014 through February 1, 2015. (Joint Stip. of Fact and Law and Request for Entry of Order, Ex. 22, at 2) The administrative law judge relied on this representation in approving the settlement. He found that Blackmon was totally disabled from October 16, 2014 through February 1, 2015 and ordered HII to pay him for that period based on an average weekly wage of $1,154.03. (Decision and Order Approving Settlement, Ex. 23, at 2). In his deposition, Blackmon confirmed that his representation to the administrative law judge

---

[1] Weather data for October 16, 2014, available at: https://www.wunderground.com/history/airport/KPQL/2014/10/16/DailyHistory.html?req_city=Pascagoula&req_state=MS&req_statename=Mississippi&reqdb.zip=39562&reqdb.magic=2&reqdb.wmo=99999; Weather data for January 27, 2015, available at: https://www.wunderground.com/history/airport/KPQL/2015/1/27/DailyHistory.html?req_city=Pascagoula&req_state=MS&req_statename=Mississippi&reqdb.zip=39562&reqdb.magic=2&reqdb.wmo=99999.

and the judge's finding were correct.  He testified that he was totally disabled from October of 2014 to February of 2015 and unable to work at all.  (Pltf. Dep. 10)

Blackmon filed a Charge of Discrimination with the Equal Employment Opportunity Commission in December of 2014 and filed this action, *pro se*, on April 28, 2015.  Because he was paid in full for the time he missed as part of his worker's compensation settlement, Blackmon does not seek to recover back pay.  (Pltf. Dep. 10-11)

## ARGUMENT

**I.     Summary Judgment Standard**

Summary judgment should be granted if the movant demonstrates that no genuine issue of material fact exists and identifies the part of the record that supports this assertion. *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989).  To defeat the motion, the non-movant must then offer significant probative evidence from which a reasonable jury could find in his favor on every element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).  Neither conclusory allegations nor unsubstantiated assertions will satisfy this burden. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). Summary judgment is required if the non-movant cannot establish the existence of even one element that is essential to her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**II.    Blackmon is judicially estopped from pursuing his ADA claim.**

Blackmon is judicially estopped from pursuing his ADA claim because he represented in his worker's compensation case that he was totally disabled during the same period that he now claims he was able to work but that HII discriminated against him by not allowing him to do so.  The doctrine of judicial estoppel bars him from taking such inconsistent positions.

7

Judicial estoppel is "a common law doctrine that 'prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.'" *Everett v. Nat'l Union Fire Ins. Co. of Pittsburg, P.A.*, 857 F.Supp.2d 611, 613 (S.D. Miss. 2012) (citing *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003) (quoting *Ergo Science, Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996)). Its purpose is to "protect the integrity of the courts—preventing a litigant from contradicting its previous, inconsistent position when a court has adopted and relied on it." *Ahrens v. Perot Systems Corp.*, 205 F.3d 831, 833 (5th Cir. 2000) (quoting *Afram Carriers, Inc. v. Moeykens,* 145 F.3d 298, 303 (5th Cir.1998), *cert*. denied, 525 U.S. 1141 (1999)). The doctrine applies to bar pursuit of a claim if the following two elements are satisfied: (1) the position of the party to be estopped is "clearly inconsistent with its previous one"; and (2) the party "must have convinced the court to accept that previous position." *Everett, 8*57 F.Supp.2d at 613 (citing *Hall*, 327 F.3d at 396).

Both elements are present here. First, Blackmon's position in his worker's compensation case against HII directly contradicts his position in this action. In his worker's compensation case, Blackmon signed a stipulation stating unequivocally that he was totally disabled from October 16, 2014 through February 1, 2015. In contrast, Blackmon claims in this case that he could have worked during the same period and that HII violated the ADA because it did not provide him with a new job or allow him to return to his position when he failed to complete the respirator fit test. (Complaint; Answer to Interrogatory 13, Ex. 24)  To prevail on his failure-to-accommodate claim, Blackmon must prove that he was qualified to do his job at the time he claims he should have been accommodated. *Cato v. First Federal Community Bank*, 668 F.Supp.2d 933, 947 (E.D. Tex. 2009) (explaining that plaintiff must show he "was a qualified

8

individual with a disability at the time the request for accommodation was made"). Yet Blackmon represented to the administrative law judge that he was totally disabled at the time.

The second element is also present. Based on Blackmon's representation that he was totally disabled, the administrative law judge ordered HII to pay Blackmon for the three and a half months of work he missed. He is thus barred from asserting in this lawsuit that he was able to work. *See Everett,* 8*57* F.Supp.2d at 616 (holding that "the [Mississippi Workers' Compensation Commission's] approval of plaintiff's workers' compensation settlement with J.B. Hunt and its workers' compensation carrier satisfies the judicial acceptance requirement"); *Ahrens v. Perot Systems Corp.*, 205 F.3d 831 (5th Cir. 2000) (affirming summary judgment for employer where district court held plaintiff was estopped from asserting discriminatory discharge claim under ADA because she claimed in a previous action that she had been terminated for other reasons); *McClaren v. Morrison Management Specialists, Inc*., 316 F.Supp.2d 489, 504 (W.D. Tex. 2004) (holding that judicial estoppel precluded discrimination claim because "there is an obvious inconsistency" between plaintiff's statements to the Social Security Administration that plaintiff was unable to work given his disability and his statements to the Court that he would have been able to work if selected for the position"); *Pena v. Houston Lighting & Power Co*., 978 F. Supp. 694, 699 (S.D. Tex. 1997) (explaining that the plaintiff applied for and received long-term disability benefits, representing that he was totally disabled, and to allow him to "now turn around and claim that he was unfairly discriminated against because he is not totally disabled but can perform the essential functions of his job would countenance a fraud either on this Court or on the Social Security Administration and Plaintiff's own insurance company"); *Harris v. Marathon Oil Co*., 948 F. Supp. 27, 29 (W.D.Tex.1996), aff'd, 108 F.3d 332 (5th Cir. 1997) (finding that plaintiff who asserted he was totally disabled

and who received long-term disability benefits was estopped from bringing ADA claim); *August v. Offices Unlimited, Inc.*, 981 F.2d 576 (1st Cir. 1992) (holding that plaintiff who certified on form for disability benefits that he was "totally disabled" was precluded as a matter of law from arguing that he was a "qualified handicapped person" under Massachusetts law).

These decisions stand for a fundamental principle. A litigant cannot profit from taking a position in one proceeding and then attempt to profit from taking the opposite position in a later proceeding. For this reason, HII is entitled to summary judgment.

**III.  Blackmon cannot establish a claim of disability discrimination.**

Blackmon's claim also fails because he has not offered sufficient evidence to establish the elements of a failure-to-accommodate claim. The ADA prohibits discrimination against a qualified individual on the basis of his disability, which includes failing to reasonably accommodate the physical limitations of an otherwise qualified individual. *Griffin v. UPS, Inc.*, 661 F.3d 216, 221-22 (5th Cir. 2011). "To establish a claim for failure to accommodate, a plaintiff must show that: (1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to reasonably accommodate the disability." *Cortez v. Raytheon Co.*, 663 F.Supp.2d 514, 524 (N.D. Tex. 2009). Blackmon cannot satisfy these elements. He has not offered evidence that he was a qualified individual, that the HII personnel who placed him on medical leave were aware of his disability, or that HII failed to provide a reasonable accommodation.

**1. Blackmon has not offered proof that he was a qualified individual.**

A plaintiff asserting a failure-to-accommodate claim must prove that he was a "qualified individual" who could perform the essential functions of the position, either with or without

reasonable accommodation. 42 U.S.C. § 12111(8). Blackmon cannot show that he was a qualified individual for two reasons.

First, Blackmon represented to the administrative law judge in his worker's compensation case that he was totally disabled during the same period he claims he could have worked if HII had accommodated him. His sworn testimony in this case confirms this conclusion. He testified unequivocally that he was totally disabled and unable to work at all throughout the same period he claims HII should have accommodated him and let him work. (Pltf. Dep. 10) Not only does Blackmon's representation and recovery in his worker's compensation case judicially estop him from pursuing this claim, his representation and testimony mean that he cannot, as a matter of law, establish that he was qualified to perform his job. *See Cato v. First Federal Community Bank*, 668 F.Supp.2d 933, 947 (E.D. tex. 2009) (explaining that "Plaintiff cannot at once claim that for the purposes of insurance she is completely disabled, but that for the purposes of the ADA she is a "qualified individual with a disability"—or a person "who with or without reasonable accommodation, can perform the essential functions" of her job).

Second, OSHA required Blackmon to take a respirator fit test and have a properly fitting respirator. Blackmon has offered no proof that he was treated any differently from other electrical technicians, and he does not dispute that his position requires him to be able to wear a respirator. (Pltf. Dep. 18-19, 30) Indeed, Blackmon admits that he has had to use his respirator since he returned to the shipyard in February 2015. (Pltf. Dep. 26) If Blackmon could not take a respirator fit test in October 2014 as he claims, then he could not perform the essential functions of his job and was not a qualified individual.

### 2. Blackmon has offered no proof that HII's personnel were aware of his disability.

Blackmon's ADA claim also fails because there is no evidence that the HII personnel who participated in the decision to place him on medical leave in October 2014 were aware of his disability.  In fact, when they checked Blackmon's medical restrictions, they found that his physician had placed no limitations on his neck movements.  Thus they placed him on leave to give him an opportunity to obtain medical evidence that he had a disability that prevented him from taking the respirator fit test.  Though Blackmon was away from work for three and a half months, he obtained no such evidence.  To the contrary, Dr. Kesterson confirmed in January that Blackmon should have no problems either performing the respirator fit test or using a respirator.  Because there is no evidence that HII's decision makers were aware of Blackmon's disability, HII is entitled to judgment as a matter of law.

### 3. Blackmon has not proven that HII violated its duty to accommodate.

The ADA protects against disability discrimination by requiring employers to reasonably accommodate limitations, not disabilities. For this reason, the ADA does not require employers to assume that a disabled employee suffers from any limitation. *Taylor v. Principal Financial Group, Inc*., 93 F.3d 155, 165 (5th. 1996).  Indeed, employers are "obligated to make reasonable accommodations only to the physical or mental limitations resulting from the disability that is known to the employer." *Id*.

Though Blackmon claims that he could not complete the fit test because of his alleged disability, the only limitations known to HII on October 16, 2014 regarding his alleged disability were those contained in his August 11, 2014 work restrictions. (Ex. 11) None of those limitations restricted the movement of his neck or head.  Indeed, Blackmon admits that he did not have any work restrictions at the time that limited the movement of his neck. (Pltf. Dep. 22, 40)  HII thus

knew of no limitation that would prevent him from completing the respirator fit test, and thus they knew of no limitation that needed to be accommodated.

"[I]t is incumbent upon the ADA plaintiff to assert not only a disability, but also any limitation resulting therefrom." *Taylor* at 164. Blackmon has failed to offer any competent evidence that his alleged disability limited his ability to complete the respirator fit test. HII therefore had no duty to accommodate his alleged limitation. *See Griffin v. United Parcel Service, Inc.*, 661 F.3d 216, 225 (5th Cir. 2011) (explaining that "there is simply no evidence that UPS was unwilling to engage in a good-faith, interactive process with [plaintiff] regarding his request for a reasonable accommodation" because "[n]one of the information [plaintiff] provided UPS indicated that his requested accommodation was necessary for the management of his diabetes").

This element of a failure-to-accommodate claim focuses on the employer's efforts to engage with the employee in an interactive process to identify a reasonable accommodation. *Cortez v. Raytheon Co.*, 663 F.Supp.2d 514, 524 (N.D. Tex. 2009). Once an employee requests an accommodation, "the employer and employee should engage in flexible interactive discussions to determine the appropriate accommodation." *Griffin*, 661 F.3d at 224 (quoting *EEOC v. Agro Distrib.*, 555 F.3d 462, 471 (5th Cir. 2009)).  A violation of the ADA occurs only "when an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee." *Cortez*, 663 F.Supp.2d at 524 (quoting *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)).

HII had engaged in the interactive process with Blackmon for years before October 16, 2014. He repeatedly presented HII's Return-to-Work Committee with new work restrictions, and the committee determined whether any work existed in his job classification he could perform

13

with those restrictions.  When Blackmon refused to take the respirator fit test, HII again engaged in the interactive process.  HII did not discharge or discipline Blackmon for refusing to take the test. Instead, because Blackmon stated that he had a neck injury and that taking the test was painful, HII allowed him to take medical leave to obtain modified restrictions.  HII also provided him with the documents needed to apply for short-term disability benefits. (Pltf. Dep. 10, 22)

Instead of providing medical evidence that his refusal to take the respirator fit test was justified, Blackmon failed to contact HII for nearly three months, from October 16, 2014 until January 6, 2015, when he provided new work restrictions. (Edwards Dec. ¶¶5-8, Ex. 17) Upon receipt of the new restrictions, HII again engaged with him to determine if he could come back to work, and he did so less than a month later. (*Id.*) The time Blackmon missed—from October 2014 through January 2015—was a direct result of his failure to satisfy his own obligation to engage in the interactive process. HII remained ready and willing to work with Blackmon, told him very clearly what he needed to provide, and engaged with him again when he returned with new restrictions. Blackmon cannot now assert that any damages he claims he incurred because of his refusal to take the respirator fit test resulted from HII's failure to accommodate him. To the contrary, the time Blackmon missed resulted from his failure to provide the medical documentation HII requested.  An "employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer." *Griffin*, 661 F.3d at 224 (citing *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999)).

Moreover, HII's request for medical documentation to justify Blackmon's refusal to take the fit test did not violate the ADA. HII was entitled to obtain competent evidence to assess Blackmon's disability and any limitations resulting from it. *See*, *e.g., Cato v. First Federal*

14

*Community Bank*, 668 F.Supp.2d 933, 949 (E.D. Tex. 2009)(citing *Dortch v. Mem'l Herman Healthcare Sys.-Sw.*, 525 F.Supp.2d 849, 873 (S.D.Tex. 2007) (holding that to "constitute a request for accommodation under the ADA, documents or medical records must indicate an ongoing health problem that necessitates accommodation upon the employee's return")); *Lopez v. Kempthorne*, 684 F.Supp.2d 827, 895 (S.D. Tex. 2010) (finding that "the lack of any evidence of the status of Plaintiff's disease since 1991-92, the time of the diagnosis, and her refusal to provide updated medical records at the time of her second request for telecommuting defeat her claim").

## CONCLUSION

Eric Blackmon's claim is barred by the doctrine of judicial estoppel. He profited from his representation in his worker's compensation case that he was totally disabled, and he thus cannot take the position in this case that he was able to work. Moreover, HII did not violate the ADA by requiring Blackmon to take a test required by federal law when he failed to offer any medical evidence that he could not take it. HII gave him an opportunity to provide such evidence, but he did not. Blackmon was placed on medical leave because he would not take the test, not because of any disability. And Blackmon has offered no evidence that HII failed to engage with him to determine the nature of his disability and limitations and whether he was entitled to an accommodation. HII is entitled to summary judgment.

Dated:  May 20, 2016.

                    Respectfully submitted,

                    HUNTINGTON INGALLS INCORPORATED

                    By Its Attorneys,

                    BAKER, DONELSON, BEARMAN,
                    CALDWELL & BERKOWITZ, PC


                    By:  s/Brooks Eason
                         BROOKS EASON

Of Counsel:

Brooks Eason, MSB No. 5286
Adam Gates, MSB No. 102305
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, PC
One Eastover Center
100 Vision Drive, Suite 400
Jackson, Mississippi  39211
Telephone:  601-351-2400
Facsimile:  601-351-2424
Email:  beason@bakerdonelson.com
       agates@bakerdonelson.com


## CERTIFICATE OF SERVICE

     I certify that the foregoing has been served via United States Mail, postage prepaid, to the plaintiff:

        Eric D. Blackmon
        5712 Fairwood Drive
        Moss Point, MS 39563

Dated: May 20, 2016.

                    By:  s/Brooks Eason
                         OF COUNSEL