IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| ERIC D. BLACKMON | § | PLAINTIFF |
| | § | |
| | § | |
| v. | § | Civil No. 1:15CV313-HSO-JCG |
| | § | |
| | § | |
| HUNTINGTON INGALLS | § | DEFENDANT |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S [49] MOTION FOR SUMMARY JUDGMENT AND
DISMISSING PLAINTIFF'S CLAIMS WITH PREJUDICE**

BEFORE THE COURT is the Motion for Summary Judgment [49] filed by

Defendant Huntington Ingalls.  Plaintiff has filed a Response [51] in opposition to

Defendant's Motion.  Having considered the Motion, related pleadings, the record,

and relevant legal authority, the Court is of the opinion that the Motion for

Summary Judgment should be granted, and that Plaintiff's claims should be

dismissed with prejudice.

## I.  BACKGROUND

A.   Factual Background

Plaintiff Eric D. Blackmon ("Plaintiff" or "Mr. Blackmon") began working for

Defendant Huntington Ingalls ("Defendant" or "HII") at its shipyard in Pascagoula,

Mississippi, in December 2004.  Dep. of Eric D. Blackmon [49-1] at 8, 18.  On

October 22, 2012, Plaintiff was injured on the job at the shipyard when he "was

walking down a passageway and hit his head (wearing a hard hat) on a speaker

hanging down." Progress Notes [49-2] at 1.  Plaintiff was unable to complete his work shift and was sent home.  *Id.*

As a result of his injury, Plaintiff was on medical leave for various periods of time from October 30, 2012, until August 12, 2014.  *See, e.g., id.* at 1-3; Work Release [49-3] at 1; Work Excuse [49-4] at 1-2; Work Release [49-5] at 1; Work Restrictions Form [49-6] at 1-2; Work Release [49-7] at 1.  During this time period, Plaintiff returned to work at the shipyard for certain intervals, subject to varying temporary and permanent restrictions placed on him by his physicians.  *See, e.g.,* Work Release [49-3] at 1; Work Release [49-5] at 1; Work Restrictions [49-6] at 1; Work Release [49-7] at 1; Progress Notes [49-9] at 2-3.

Plaintiff was reinstated to work for Defendant on August 12, 2014, with certain permanent restrictions defined by his physician, including lifting limited to 45 pounds and performing only occasional bending, kneeling, stair climbing, stopping, overhead reaching, and ladder climbing.  Record [49-11] at 1-3.

> In the late summer and early fall of 2014, the shipyard transitioned from using respirators made by U.S. Safety to respirators made by 3M.  All employees who were fitted for U.S. Safety respirators, as Mr. Eric Blackmon had been, were required to transition to the new 3M model.  HII therefore performed the [Occupational Safety and Health Administration]-required fit test on approximately 3,000 employees to ensure that all of the new 3M respirators fit properly.

Decl. of Joaquin Orozco [49-12] at 2.

Plaintiff was asked to take the respirator fit test on October 16, 2014.  Dep. of

Eric D. Blackmon [49-1] at 18; Respirator Qualification [49-15] at 1-2.[1]  During the

test, Plaintiff was asked to move his "head from side to side in a rapid motion"

which Plaintiff maintains caused him pain due to his neck injury.  Dep. of Eric D.

Blackmon [49-1] at 19.  Plaintiff stopped the test because "[h]e said that he was in

pain and could not turn his head either way."  Decl. of Lance Hesselrode, N.P. [49-

13] at 2.  At the time of the test, there were no medical restrictions from Plaintiff's

physician which limited his neck movement.  Dep. of Eric D. Blackmon [49-1] at 22,

40.

        The employee administering the respirator fit test "checked Mr. Blackmon's

work restrictions, and saw that he did not have any restriction on neck movements

that would prevent him from completing the test."  Decl. of Lance Hesselrode, N.P.

[49-13] at 2.  The employee "then notified [Nurse Practitioner Lance Hesselrode]

about the situation."  *Id.*  Hesselrode then "reviewed Mr. Blackmon's work

restrictions and confirmed that he had no restrictions on neck movement."  *Id.*

Hesselrode informed Plaintiff that, based upon his work restrictions, Plaintiff

"should be able to take the test."  *Id.*  When Plaintiff refused, Hesselrode "informed

HII's company physician, Dr. Charles McRaney, of the situation and asked him to

speak with Blackmon."  *Id.*

        Dr. McRaney, who oversaw the administration of the respirator fit tests, also

reviewed Plaintiff's most recent work restrictions and explained to Plaintiff that "he

---

        [1]  Plaintiff had taken a respirator fit test one other time, around 2010, before his
injury.  *Id.*

did not have any restriction that would prevent him from completing the test."
Decl. of Charles McRaney, M.D. [49-14] at 1. Dr. McRaney informed Plaintiff that,
even if he did have a restriction prohibiting extreme neck positions, "the respirator
fit test would not require him to take any extreme neck positions. Mr. Blackmon
still refused." *Id.* at 1-2. "When it was clear that Mr. Blackmon would not
cooperate, [Dr. McRaney] explained to him that because his work restrictions did
not limit his ability to take the test, he could either complete the test and return to
work or he would have to go out on leave and return with documentation from his
doctor stating that he could not take a respirator fit test." *Id.* at 2.

Michelle Edwards, Defendant's Return-to-Work Coordinator, was informed of
Plaintiff's refusal to complete the test and met with Plaintiff. Decl. of Michelle
Edwards [49-17] at 1. Plaintiff asked Edwards "if there were any positions in which
he could work that did not require him to be able to wear a respirator." *Id.*
Edwards spoke with Plaintiff's foreman, Elicia Bennett, about the request and
submitted Plaintiff's request for accommodation to Cecil McCray, a member of the
Electrical Department management who sat on the Return-to-Work Committee at
the time and who was also Plaintiff's General Superintendent. *Id.* at 1-2. McCray
informed Edwards that no position was available. *Id.* at 2. Edwards

> made clear to [Plaintiff] that he must provide additional information from
> his doctor to justify his refusal to take the respirator fit test. Mr.
> Blackmon also complained of asthma and claustrophobia during [their]
> meeting, but he had no medical documentation to substantiate these
> complaints either. Because Mr. Blackmon did not have any medical
> documentation stating that he could not complete the test or that his
> refusal was based on his October 2012 injury, he was placed on non-

-4-

industrial leave, effective October 17, [2014,] and given a packet that allowed him to apply for short-term disability benefits.

*Id.*

Plaintiff "did not provide HII a new set of work restrictions from October 17, 2014 until January 6, 2015." *Id.* The January 6, 2015, work restrictions which were eventually provided noted in relevant part that Plaintiff could only occasionally take extreme neck positions. Work Release [49-18] at 1. On January 22, 2015, Plaintiff's physician "provided documentation explaining that there '[s]hould be no problems with Mr. Blackmon using respirator or performing test.'" Decl. of Michelle Edwards [49-17] at 2; *see also* Letter [49-19] at 1. On January 27, 2015,[2] Plaintiff "reported to HII and completed his respirator fit test." Decl. of Michelle Edwards [49-17] at 2. Plaintiff was reinstated after he completed the test. *Id.*

At some point before Plaintiff went on medical leave in October 2014, he filed a claim for workers' compensation related to his October 22, 2010, injury under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901, *et seq.* Dep. of

---

[2]   Several items in the record indicate that the respirator fit test was completed on January 27, 2016. *See, e.g.,* Def.'s Mem. [50] at 6; Decl. of Michelle Edwards [49-17] at 2; Decl. of Charles McRaney, M.D. [49-14] at 2. However, it appears from a review of the record as a whole that the actual date was January 27, 2015. *See, e.g.,* Def.'s Mem. [50] at 6 (stating that "[o]n January 27, 2016 [sic], Blackmon reported to HII and completed the same test he had claimed that he could not complete only *three months earlier*," and referring to the date Plaintiff passed the test as January 27, 2015) (emphasis added); Medical History [49-20] at 3-5 (dated January 27, 2015, and stating that Plaintiff had passed the respiratory fit test that day). Even if these discrepancies or typographical errors could be considered genuine disputes of fact, the Court is not persuaded that they are material. *See* Fed. R. Civ. P. 56(a).

Eric D. Blackmon [49-1] at 33; *see also* Joint Stipulations [49-22] at 2.  On March

30, 2015, Plaintiff and Defendant entered into a Joint Stipulations of Fact and Law

and Request for Entry of Order before the Administrative Law Judge ("ALJ") which

stated, in relevant part,

> [t]hat the Claimant was temporarily and totally disabled due to the
> effects of the injury of October 22, 2012, on the following periods only:
> October 30, 2012 through January 8, 2013[;]
> January 14, 2013 through January 27, 2013[;]
> January 31, 2013 through August 11, 2013[; and]
> October 16, 2014 through February 1, 2015[.]

Joint Stipulations [49-22] at 2.

In reliance upon these Joint Stipulations [49-22], the ALJ entered a Decision

and Order Approving Settlement [49-23] on April 9, 2015.  The ALJ ordered

Defendant to pay Plaintiff compensation for temporary total disability during the

above-quoted time periods, as a result of the injury on October 22, 2012.  Decision

and Order [49-23] at 2.  During his deposition taken in the present litigation,

Plaintiff also confirmed that he was totally disabled and unable to work from

October 2014 until February 2015.  Dep. of Eric D. Blackmon [49-1] at 10.

B.     Procedural History

Plaintiff filed a charge of discrimination against Defendant with the United

States Equal Employment Opportunity Commission ("EEOC").  On January 30,

2015, the EEOC issued its Dismissal and Notice of Rights to Sue.  Notice [1] at 5.

Plaintiff filed a Complaint [1] in the United States District Court for the

Southern District of Alabama on April 28, 2015, naming Huntington Ingalls as the

sole Defendant.  The Complaint advanced claims of disability discrimination

against Defendant under the Americans with Disabilities Act, 42 U.S.C. §§ 12101,

*et seq.* ("ADA").  Compl. [1] at 1-3.  Plaintiff alleged that

> [o]n October 16, 2014, I was required to take a respirator fit test and I
> was unable to pass due to my disability.  I advised Michelle Edwards of
> a position available with my Foreman Elecia Bennett.  Mrs. Bennett
> spoke with Mrs. Edwards an[d] told her of this position that wouldn't
> require me to wear a respirator, but I was accommodated nor sent back
> to the job I was previously doing before the respirator test.
>
> As a result Michelle Edwards put me on Non-Industrial Leave without
> pay.  To include [sic] Michelle Edwards knows of my neck injury which is
> called cervicalgalia [sic].

*Id.* at 3.

On August 13, 2015, this case was transferred to this Court.  *See* Endorsed

Order [12].  On May 20, 2016, Defendant filed a Motion for Summary Judgment

[49] seeking dismissal of Plaintiff's claims.  Plaintiff has filed a Response [51] in

opposition to Defendant's Motion.

## II.  DISCUSSION

A.   Legal standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is

appropriate "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  If the movant carries this burden, "the nonmovant must go beyond

the pleadings and designate specific facts showing that there is a genuine issue for

trial."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC&R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted).

If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010).

B.  <u>Defendant is entitled to summary judgment on Plaintiff's ADA claim.</u>

Plaintiff alleges that Defendant failed to accommodate him in violation of the ADA. Compl. [1] at 3. "The ADA prohibits an employer from discriminating against a qualified individual with a disability on the basis of that disability." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 226-27 (5th Cir. 2015) (quotation omitted). The ADA requires an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise

qualified individual with a disability . . . ."  42 U.S.C. § 12112(b)(5)(A).  To prevail

on a failure-to-accommodate claim, a plaintiff must show that:

> (1) the plaintiff is a "qualified individual with a disability;" (2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations.

*Neely v. PSEG Texas, Ltd. P'ship*, 735 F.3d 242, 247 (5th Cir. 2013) (emphasis

removed) (quotation omitted).

Defendant argues that Plaintiff's failure-to-accommodate claims fail for three

reasons.  According to Defendant, Plaintiff "has not offered evidence that he was a

qualified individual, that the HII personnel who placed him on medical leave were

aware of his disability, or that HII failed to provide a reasonable accommodation."

Def.'s Mem. [50] at 10.

1. <u>Plaintiff has failed to demonstrate that he was a qualified individual.</u>

Defendant posits that, because Plaintiff represented to the ALJ and

confirmed in his deposition in this case that he was totally disabled and unable to

work during the relevant time period, Plaintiff was not a "qualified individual"

under the ADA.  The Court agrees.

"An ADA plaintiff bears the burden of proving that she is a 'qualified

individual with a disability'—that is, a person 'who, with or without reasonable

accommodation, can perform the essential functions' of her job."  *Cleveland v. Policy

Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (quoting 42 U.S.C. § 12111(8)).  To be a

qualified individual under the ADA, a plaintiff

must be able to show that he could either (1) perform the essential functions of the job in spite of [his] disability, or (2) that a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of his job.

*Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 592 (5th Cir. 2016) (quotation omitted).

When considering a sworn application for and the receipt of disability benefits, the United States Supreme Court has held that "an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier [Social Security Disability Insurance] total disability claim. Rather, she must proffer a sufficient explanation." *Cleveland*, 526 U.S. at 806.

When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, the court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

*Id.* at 807.

*Cleveland* is instructive here. Plaintiff has taken two inconsistent positions. Plaintiff has testified under oath in his deposition in this case that he was completely disabled and unable to work during the relevant time. Dep. of Eric D. Blackmon [49-1] at 10. Plaintiff has also represented in the Joint Stipulations relied upon by the ALJ in his workers' compensation case that he was temporarily and totally disabled during the pertinent time. Joint Stipulations [49-22] at 2. Plaintiff's ADA accommodation claim, however, necessarily alleges that he was "an

-10-

otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A).

In his Response [51], Plaintiff does not attempt to offer any explanation as to how he could simultaneously be completely disabled, yet be a "qualified individual" under the ADA.  Plaintiff instead focuses on whether he had a disability and argues that Defendant "admitted that [he] was temporarily and totally disabled from October 16, 2014 through February 1, 2015 which shows a genuine issue that a disability violation [sic] of the American [sic] Disability Act."  Resp. [51] at 2.  The question before the Court, however, is whether Plaintiff was an "otherwise *qualified individual* with a disability."  42 U.S.C. § 12112(b)(5)(A) (emphasis added).

Plaintiff has not argued or presented competent summary judgment evidence sufficient to demonstrate that he was a qualified individual under the ADA during the time period at issue, from October 17, 2014, to January 17, 2015.  *See id.* Plaintiff has consistently maintained, both before the ALJ and this Court, that he was totally disabled and unable to work during the relevant time period.  Nor has Plaintiff offered any explanation or otherwise attempted to demonstrate that he was in fact a qualified individual with a disability.  Plaintiff has not shown that, from October 17, 2014, to January 17, 2015, he could either perform the essential functions of the job in spite of his disability, or that a reasonable accommodation of his disability would have enabled him to perform the essential functions of his job. *See Cannon*, 813 F.3d at 592.  Because Plaintiff has failed to create a material fact question on an element of his prima facie ADA accommodation claim, Defendant is entitled to summary judgment.

-11-

2.    <u>Plaintiff has failed to show that his disability and its consequential limitations were known by the covered employer.</u>

Even if Plaintiff was a qualified individual with a disability during the relevant time, Plaintiff has not pointed to competent summary judgment evidence showing that his disability and its consequential limitations were known by Defendant.  *See Neely*, 735 F.3d at 247.  The Fifth Circuit has held that

> [f]or purposes of proving ADA discrimination, it is important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability.  This distinction is important because the ADA requires employers to reasonably accommodate limitations, not disabilities.  "The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual."

*Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996) (quoting 29 C.F.R. 1630.2(j), App. (1995)).

When Plaintiff indicated that he could not continue the respirator fit test on October 16, 2014, Defendant's employees responsible for administering the test reviewed Plaintiff's work restrictions and found none prohibiting extreme neck positions.  Decl. of Charles McRaney, M.D. [49-14] at 1; Decl. of Lance Hesselrode, N.P. [49-13] at 2.  Plaintiff himself testified that, at the time of the test, he had no medical restrictions from his physician which limited his neck movement.  Dep. of Eric D. Blackmon [49-1] at 22, 40.  Even if Plaintiff did have a restriction prohibiting extreme neck positions, Dr. McRaney opined that "the respirator fit test would not require [Plaintiff] to take any extreme neck positions."  Decl. of Charles

McRaney, M.D. [49-14] at 1-2.  Plaintiff has not demonstrated that his disability and its consequential limitations were known by Defendant at the relevant time. *See Neely*, 735 F.3d at 247.

>   3.   <u>Plaintiff has not demonstrated that Defendant failed to provide reasonable accommodation.</u>

Even if Defendant had knowledge of Plaintiff's alleged limitation, Plaintiff has not created a triable fact question on whether Defendant violated the ADA by failing to reasonably accommodate that limitation.  When an employee makes a request for accommodation, "the employer is obligated by law to engage in an 'interactive process': 'a meaningful dialogue with the employee to find the best means of accommodating that disability.'"  *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009) (quoting *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 108 (1st Cir. 2005)).  "When an employer does not engage in a good faith interactive process, that employer violates the ADA . . . ."  *Id.* (citation omitted).

Defendant has presented evidence that it did engage in the interactive process with Plaintiff.  After Plaintiff asked Edwards "if there were any positions in which he could work that did not require him to be able to wear a respirator," Edwards spoke with Plaintiff's foreman about the request and submitted Plaintiff's request for accommodation to Cecil McCray.  Decl. of Michelle Edwards [49-17] at 1-2.  McCray informed Edwards that no such position was available.  *Id.* at 2.  Plaintiff has not presented any competent summary judgment evidence to the contrary or which otherwise demonstrates that there was an available position for

which Plaintiff was qualified and which Plaintiff could, with reasonable accommodations, perform.  *See Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 224 (5th Cir. 2011) ("The plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform.") (quotation omitted).  Because an employer is not required to find or create a new job for a disabled employee, *see Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir. 1995),[3] Plaintiff has not created a triable issue on whether a reasonable accommodation was feasible or that Defendant violated its duty of reasonable accommodation.

Defendant's request for medical documentation from Plaintiff showing that his alleged disability limited his ability to complete the respirator fit test did not cause a breakdown in the interactive process.  The Fifth Circuit has held that "[t]he employer need not take the employee's word for it that [he] . . . has an illness that may require special accommodation."  *Delaval v. PTech Drilling Tubulars, L.L.C.*, No. 15-20471, - - - F.3d - - - - , 2016 WL 3031069, at *4 (5th Cir. May 26, 2016) (quoting *EEOC v. Prevo's Family Mkt., Inc.*, 135 F.3d 1089, 1094-95 (6th Cir. 1998)). "Where an employee refuses to provide such documentation, [the Fifth Circuit has] held that he causes a breakdown in the interactive process that may preclude an employer's liability."  *Id.* (citing *Griffin*, 661 F.3d at 225).

---

[3] *See also Silva v. City of Hidalgo, Tex.,* 575 F. App'x 419, 424 (5th Cir. 2014) (holding that an ADA plaintiff's claim that her employer was under an obligation to create an entirely new position for her "simply cannot be squared with the statute's entitlement to a 'reasonable' accommodation").

The competent summary judgment evidence demonstrates that Defendant requested Plaintiff to provide medical documentation to support his assertion that he was unable to complete the respirator fit test. Decl. of Charles McRaney, M.D. [49-14] at 2; Decl. of Michelle Edwards [49-17] at 2. Instead, Plaintiff "did not provide HII a new set of work restrictions from October 17, 2014 until January 6, 2015." Decl. of Michelle Edwards [49-17] at 2. The work restrictions that were provided, in relevant part, state that Plaintiff could only occasionally take extreme neck positions. Work Release [49-18] at 1. On January 22, 2015, however, Plaintiff's physician "provided documentation explaining that there '[s]hould be no problems with Mr. Blackmon using respirator or performing test.'" Decl. of Michelle Edwards [49-17] at 2; *see also* Letter [49-19] at 1. Based upon the record before the Court, a reasonable juror could only conclude that Plaintiff caused any breakdown in the interactive process by failing to timely provide the documentation requested by Defendant. *See Delaval*, 2016 WL 3031069, at *5. Plaintiff's ADA accommodation claims therefore fail.

4.   <u>There are no genuine disputes of material fact which preclude summary judgment.</u>

In his Response [51], Plaintiff points to what he calls "genuine issue[s]" of fact in the summary judgment record. *See* Resp. [51] at 5. Even if Plaintiff has demonstrated that there are genuine disputes as to some of the facts contained in Defendant's Motion for Summary Judgment, Plaintiff has not shown that any of these factual disputes are material. A fact is only "'material' if its resolution in

favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon*, 560 F.3d at 326.  None of the facts that Plaintiff disputes impact whether he has satisfied his prima facie case for a failure to accommodate claim under the ADA.  The disputed facts referenced by Plaintiff in his Response therefore do not preclude summary judgment in Defendant's favor on the present record.

III.  <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment, and will dismiss Plaintiff's claims with prejudice.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion for Summary Judgment [49] filed by Defendant Huntington Ingalls is **GRANTED**, and Plaintiff Eric D. Blackmon's ADA claims for failure to accommodate are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 28th day of July, 2016.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

-16-